UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KAREN REESE, ET AL.,            )
                                )
        Plaintiffs,              )
                                )    CIVIL ACTION NO.
VS.                             )
                                )    3:17-CV-2174-G
WELLS FARGO BANK, N.A., ET AL., )
                                )
        Defendants.              )

# MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants Wells Fargo Bank, National Association ("Wells Fargo") and U.S. Bank National Association ("U.S. Bank") to dismiss the claims of the plaintiffs Karen and Wendell Reese ("Reeses") (docket entry 4). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

On August 4, 2005,[*] the Reeses executed a Texas Home Equity Adjustable Rate Note ("note") for $225,500 payable to Wells Fargo for a loan secured by a lien

---

[*] The Reeses alleged that the note was executed on August 5, 2005. Plaintiff's Original Petition ("Original Petition") at 2 (docket entry 1, exhibit 4). However, the defendants alleged that the note was executed on August 4, 2005. Motion to Dismiss and Brief in Support ("Motion") at 1 (docket entry 4). The loan documents attached to the defendants' motion state August 4, 2005. Motion, exhibit A, B.

on the property. Motion at 1. Subsequently, Wells Fargo assigned the note and security instrument to U.S. Bank. Original Petition at 3. According to loan closing documents, on August 4, 2005, the date of the extension of credit, the fair market value of the property was $282,000. *Id.* at 4. On January 1, 2005, a tax lien attached to the property. *Id.* In 2005, the taxes on the property amounted to $1,183.54. *Id.*

In total, the Reeses paid $124,340.77 to Wells Fargo and $14,828.32 to U.S. Bank on the note. *Id.* at 3. After their last payment in September 2012, $511,577.04 remained on the Reeses' note. *Id.*

On July 21, 2017, the Reeses filed this suit against Wells Fargo and U.S. Bank in the 192nd Judicial District Court of Dallas County seeking a declaratory judgment, monetary relief, and to quiet title. Original Petition at 5-6. The Reeses alleged that Wells Fargo and U.S. Bank violated the Texas Constitution because the principal on the note plus the tax liens on the property exceeded 80% of the fair market value of the property on the date of the extension of credit. *Id.* at 5. Wells Fargo and U.S. Bank filed an answer generally denying the Reeses' claims and asserting various affirmative defenses. Defendants' Original Answer at 1-3 (docket entry 1, exhibit 5). On August 16, 2017, Wells Fargo and U.S. Bank removed the case to this court. Notice of Removal ¶ 9 (docket entry 1). On August 17, 2017, Wells Fargo and U.S. Bank filed the instant motion to dismiss. Motion. The Reeses

filed a response on August 31, 2017. Response to Motion to Dismiss ("Response") (docket entry 7). Shortly thereafter, on September 8, 2017, Wells Fargo and U.S. Bank filed a reply. Reply in Support of Motion to Dismiss (docket entry 8). On September 19, 2017, the court granted the Reeses' motion for leave to file a surreply, and on September 19, 2017, the Reeses filed a surreply. Plaintiffs' Unopposed Motion and Brief for Leave to File Surreply to Motion to dismiss (docket entry 11); Order (docket entry 12); Plaintiffs' Surreply to Motion to Dismiss (docket entry 13). The motion to dismiss is now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

#### 1. *Rule 12(b)(6)*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff[s] must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [the plaintiffs'] obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader[s] [are]

entitled to relief.' " *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendants "across the line from conceivable to plausible." See *id.* at 679, 683.

A court may review the contents of the pleadings and attachments in considering a motion to dismiss for failure to state a claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Additionally, a court may consider documents attached by the defendants to their motion to dismiss if the document is referred to in the plaintiffs' complaint and it is central to the claim. *Id.* at 498-99. Here, the Reeses referenced the sworn affidavit attached by Wells Fargo and U.S. Bank in their pleadings. Original Petition at 2-3; *see generally* Motion, exhibit C. Also, the affidavit is central to the Reeses' claim that the terms of the loan are unconstitutional. Therefore, the court will consider the affidavit in determining whether to grant the defendants' motion.

### B. Application

#### 1. *The Parties' Contentions*

Wells Fargo and U.S. Bank seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Motion at 1. In their motion, Wells Fargo and U.S. Bank focus on three primary issues. First, the Reeses executed a

sworn affidavit expressly acknowledging that the loan did not violate the Texas Constitution. Motion at 1. On August 4, 2005, the plaintiffs signed the sworn affidavit and executed the note and security instrument. Original Petition at 2-3; *see generally* Motion, exhibits A, B, C. The sworn affidavit states:

> [t]he Extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of credit is made.

Motion at 2. Wells Fargo and U.S. Bank contend that this affidavit directly contradicts the Reeses' claim that the amount of the extension of credit exceeds 80% of the fair market value of the property. *Id.* at 5. Therefore, they argue, the Reeses' claim is precluded. *Id.*

Second, Wells Fargo and U.S. Bank argue that a tax lien is not an encumbrance of record and should not be included in the loan to value determination. *Id.* at 5-6. Citing Black's Law Dictionary, the defendants define "of record" as "[r]ecorded in the appropriate records." *Id.* at 6. Because the tax lien on the property is not recorded in any real property records, Wells Fargo and U.S. Bank conclude that it is not an encumbrance of record. *Id.* Therefore, the amount of the tax lien should not be included in any calculations for the purposes of the 80% rule. *Id.*

Third, Wells Fargo and U.S. Bank argue that the Reeses' quiet title claim should be dismissed because it relies on the weakness of the defendants' title, rather than the strength of their own title. *Id.* at 7. Wells Fargo and U.S. Bank further argue that declaratory judgment is inappropriate to obtain a forfeiture of all principal and interest because declaratory judgment only provides a defense to foreclosure. *Id.* Alternatively, they argue that the claim is time-barred because the cause of action accrued when the breach of the Texas Constitution occurred on the closing date. *Id.* at 8.

In response, the Reeses advance three contentions. First, the Reeses argue that the sworn affidavit fails to prove that no constitutional violation occurred because it contains conclusions of law or mixed matters of law and fact. Response at 2-3. The Reeses contend that an affidavit should be a signed statement of facts and that laymen cannot make legal conclusions. *Id.* at 2. They also argue that the boilerplate language of the contract and the "take-it-or-leave-it" nature of the affidavit cannot "sanitize a constitutional violation." *Id.*

Second, the Reeses argue that the tax lien on the property is an encumbrance of record. *Id.* at 3. In support, the Reeses note that the encumbrance of record requirement is meant to protect lenders against secret, unrecorded liens and that tax liens are common knowledge in the real estate business. *Id.* at 4. As participants in the mortgage lending business, the Reeses allege that Wells Fargo and U.S. Bank had

notice of the lien. *Id.* Further, the Reeses argue that tax liens are perfected without further action, which is equivalent to "of record." *Id.*

Third, the Reeses argue that they have asserted a valid quiet title claim. *Id.* at 7. They contend that the claim is one upon which relief can be granted because they alleged an interest in property and possession of the property. *Id.* at 6-7. Lastly, the Reeses argue that the statute of limitations has not barred their claims because they can still recover on their quiet title claim, even if the statute of limitations on a breach of contract claim has expired. *Id.* at 7.

2. *The Reeses' Constitutional Claim*

In Texas, the homestead is protected by statute and the Texas Constitution. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). The Texas Constitution protects the homestead of a family or person from forced sale except to pay debts for an extension of credit that is of a "principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record . . . does not exceed 80 percent of the fair market value" of the property on the date of the extension of credit. TEX. CONST. art. 16, § 50(a)(6)(B). This provision only protects against forced sale; it provides no other constitutional recourse for a violation. *Garofolo*, 497 S.W.3d at 478-79. Compliance with the terms and conditions required to be eligible for foreclosure is determined at the time of origination of the loan. *Id.* at 478. Where a

lender has included the necessary terms and conditions at origination, the loan complies with the Texas Constitution. *Id.* A failure to honor those terms and conditions does not establish a constitutional violation but a borrower would have other recourse for the lender's failure to comply with the terms of the loan. *Id.*; see also *Wood v. HSBC Bank USA, National Association*, 505 S.W.3d 542, 546 (Tex. 2016).

Where an allegation in the pleadings is contradicted by the contents of an exhibit, the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hospital*, 355 F.3d 370, 377 (5th Cir. 2004). In a similar case from this district, the court dismissed the plaintiffs' allegation that the principal amount of credit violated the 80% provision of the Texas Constitution because they had sworn under oath that the extension of credit did not exceed 80% of the fair market value of the property. *Summers v. PennyMac Corp.*, No. 3:12-CV-1235-L, 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (Lindsay, J.). Thus, the affidavit contradicted the pleadings and the affidavit controlled. *Id.*; see also *Amaro v. Bear Stearns Residential Mortgage Corporation*, No. 1:15-CV-74, 2016 WL 6775504, at *2-3 (S.D. Tex. March 31, 2016) (concluding that defendant's summary judgment evidence, including a sworn affidavit, warranted dismissal of the plaintiffs' claims where plaintiffs "failed to present any evidence to controvert" the defendant's evidence that the plaintiffs were in default on their loan).

Here, the Reeses swore under oath that the extension of credit complied with Section 50(a)(6) of the Texas Constitution. Motion, exhibit C at 1. Thus, the sworn affidavit directly contradicts the Reeses' claim that the terms of the loan violated the Texas Constitution. *See* Original Petition at 5. Because the Reeses referenced the affidavit in their pleadings and Wells Fargo and U.S. Bank attached it to their motion, the affidavit may be considered and controls the analysis. See *St. Luke's Episcopal Hospital*, 355 F.3d at 377; *Collins*, 224 F.3d at 498-99; Original Petition at 2, 3; Motion, exhibit C at 1. Though the Reeses argue that the language of the affidavit cannot avoid a constitutional violation, Texas law is clear that the language in the loan documents is all that is required for compliance and any failure to adhere to the terms of the loan would perhaps give rise to other claims, but not a constitutional violation. *Garofolo*, 497 S.W.3d at 478. Therefore, the Reeses' claim that the loan violated the Texas Constitution should be dismissed.

Further, because the sworn affidavit controls the analysis in this case, the court declines to address whether a tax lien constitutes an encumbrance of record for the purposes of applying the 80% rule.

### 3. *Quiet Title Claim*

To recover on a quiet title claim in Texas, the plaintiffs must show (1) an interest in a specific property, (2) that title to the property is affected by the defendants' claim, and (3) that the claim is invalid or unenforceable. *Warren v. Bank*

*of American, National Association*, 566 Fed. App'x. 379, 382 (5th Cir.), *cert. denied*, 135 S. Ct. 197 (2014); *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.--El Paso 2012, pet. denied).  A cloud of title occurs where an outstanding claim or encumbrance, if valid, would affect the title of the property owner.  *Vernon*, 390 S.W.3d at 61.  Where plaintiffs prove a right to ownership and that the defendants' adverse claim is a cloud on the title, the effect of a suit to quiet title is to declare the defendants' claim to title invalid or ineffective.  *Id.*  A suit to quiet title is an equitable remedy, and "[n]o Texas case has ever awarded damages . . . ."  *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); see also *Vernon*, 390 S.W.3d at 61.

To prevail on a quiet title claim, the plaintiffs must recover on the strength of their own title, rather than the weakness of the defendants' title.  *Halbert v. Green*, 293 S.W.2d 848, 852 (Tex. 1956).  The "[p]laintiff[s] may meet this burden in one of four ways: 1) [they] can show title emanating from the sovereignty of the soil to [themselves]; or 2) [they] can show title in [themselves] emanating from a common source to which the defendant[s] claim[]; or 3) [they] may show title through limitations; or 4) [they] can show prior possession antedating defendant[s'] possession."  *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.).

In *Warren v. Bank of America, National Association*, 566 Fed. App'x 379 (5th Cir. 2014), the Fifth Circuit, applying Texas law, affirmed the decision to grant a motion

to dismiss the plaintiff's quiet title claim where he did not demonstrate his own superior claim to title. *Id.* at 382-83. The plaintiff merely alleged a "conclusory" interest in the title that was "unsupported by specific factual allegations." *Id.* at 382. Instead of providing proof that he was current on his mortgage payments, the plaintiff "impermissibly relied on the weakness of [the defendant's] title" to prove his claim. *Id.* at 382. The court reasoned that the plaintiff failed to state a claim upon which relief may be granted because the pleadings merely stated that the defendant claimed to own a loan at the plaintiff's address and the plaintiff failed to establish his own superior right to the property. *Id.* at 383.

Similarly, in another case, the Northern District of Texas concluded that a plaintiff failed to allege facts sufficient to prove superior title to property where she merely alleged that "she is in possession of the deed of trust" and that the defendant's deed is "clouding her rightfully and properly-owned title." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012) (Lynn, J.). The court reasoned that the plaintiff failed to demonstrate how her possession gave her superior title and that the "vague and conclusory allegations" were insufficient. *Id.*

In the present case, the Reeses alleged only conclusory statements that they "own their Homestead under deed duly executed, delivered, acknowledged and recorded, have possession" and have had possession "for many years." Original Petition at 6. They further alleged that the security instrument constitutes a cloud

on their title.  *Id.*  The Reeses did not allege facts to demonstrate that payments were current or any other facts to prove superior title.  *Id.* at 3; see *Warren*, 566 Fed. App'x. at 382.  Although the Reeses alleged they made payments to Wells Fargo and U.S. Bank, they did not allege that they were current on their loan payments.  Original Petition at 3.

The Reeses also argued that their allegations were sufficient to demonstrate that their possession preceded the defendants' possession, but only support their claim with a reiteration of their possession of the property.  *See* Response at 6.  These conclusory statements do not establish facts sufficient to support the Reeses' claim to quiet title.  See *Warren*, 566 Fed. App'x. at 383; *Hurd*, 880 F. Supp. 2d at 767.  Further, even if the extension of credit violated the Texas Constitution, this defect would not entitle the Reeses to prevail on their quiet title claim because the Reeses must prove that their own title is superior and may not rely upon any weaknesses of the defendants' title.  See *Halbert*, 293 S.W.2d at 852.  Because the Reeses have not alleged facts sufficient to establish superior title, the court concludes that dismissal of the plaintiffs' quiet title claim is appropriate.

### III.  CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED**.  Because the Reeses' sworn affidavit contradicts their claim that the extension of credit violates the Texas Constitution, the Reeses have failed to state a claim upon which relief can

be granted.  Additionally, the Reeses have failed to state a valid claim to quiet title because they have not demonstrated that their title is superior to the defendants'.  Accordingly, the Reeses' claims are **DISMISSED** without prejudice.  The plaintiffs shall have leave to amend their complaint to cure the deficiencies described above -- if they can -- provided that the plaintiffs' amended complaint is filed and served no later than **December 13, 2017**.

      SO ORDERED.

December 4, 2017.

                                          **A. JOE FISH**
                                          **Senior United States District Judge**